UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JA SOLAR USA, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-19-2220 |
| | § | |
| EP EXPEDITED TRANSPORT, LLC, | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is a motion for summary judgment filed by defendant EP Expedited Transport, LLC ("EP"). Dkt. 13. Plaintiff JA Solar USA, Inc. ("JA") also moved to strike evidence in its response to EP's motion. Dkt. 14. After considering the motion for summary judgment, motion to strike, JA's response to the motion for summary judgment, and applicable law, the court is of the opinion that the motion to strike (contained in Dkt.14) should be GRANTED IN PART AND DENIED IN PART and the motion for summary judgment (Dkt. 13) should be DENIED.

**I. BACKGROUND**

This case relates to payment for solar panels manufactured by JA that were damaged when EP's truck that was carrying the panels was involved in a single vehicle rollover incident on October 26, 2016. Dkts. 1, 13. JA sold the panels to a third-party buyer in August 2016, and its freight forwarder, MIQ Logistics-LAX, hired Nolan Transportation Group, Inc. ("NTG") to be a freight broker. Dkt. 13. NTG in turn arranged for EP to serve as the carrier to transport the panels from JP's warehouse in New Jersey to the buyer in Bend, Oregon. *Id.*; *see also* Dkt. 9 at 19 (Global Marine Consultants, Inc. Survey Report). EP contends that NTG sent a notice of claim letter to EP and EP's insurer on October 28, 2019. Dkt. 13 (citing Dkt. 13, Ex. 1, Ex. A). EP additionally

contends that Midway Insurance Management International, Inc. ("MIMI"), its insurer's third-party claims administrator, responded to NTG's claim letter on October 31, 2016, acknowledging and disallowing the claim. *Id.* (citing Dkt. 13, Ex. 1, Ex. B).

On November 23, 2016, Global Marine Consultants, Inc. ("GMC") began an investigation into the damaged cargo at the request of Cox Claims Group (USA), LLC ("Cox"), underwriters for JA's insurer. Dkts. 9, 13. GMC inspected the panels on January 13, 2017, sold the panels at a salvage sale on December 6, 2017, on an "as is" basis, and prepared a report dated December 14, 2017. Dkt. 9 at 21, 25 (survey report); Dkt. 13. Meanwhile, on July 18, 2017, Cox presented a claim for $161,732.00 to EP. Dkt. 14, Ex. A, Ex. 1. This amount allegedly represents the value of the cargo plus storage fees. *Id.*

On June 20, 2019, JA filed this lawsuit against EP pursuant to 49 U.S.C. §§ 13501 and 14706. Dkt. 1. JA seeks $102,456.00, pre-judgment and post-judgment interest, and costs, from EP because JA hired EP to move the goods in question and EP, an interstate carrier, failed to deliver the goods as received. *Id.*

EP moves for summary judgment, arguing that the applicable statute of limitations is two years from the date of the denial letter, and that MIMI's October 31, 2016 letter was a denial letter. Dkt. 13. Thus, according to EP, the statute of limitations ran on October 31, 2018, and the June 20, 2019 lawsuit was untimely. *Id.* JA argues that the October 31, 2016 letter (1) was not disclosed until very late in discovery and never presented to Cox, who made the proper claim in this case, and thus and should not be admitted into evidence; and (2) was not a proper denial letter anyway. Dkt. 14. JA contends that the earliest date upon which the limitations period could possibly have commenced is July 18, 2017, when Cox presented the claim to EP. *Id.* JA also moves to strike the

October 28, 2016 intent to file claim letter from NTG because it was not disclosed until after discovery. *Id.*

The motions are now ripe for disposition. The court will first address the motion to strike and then turn to the motion for summary judgment.

## II. MOTION TO STRIKE

JA moves to strike two of EP's exhibits because they were not timely filed. Dkt. 14. EP did not respond to JA's motion to strike. Only Exhibit A, which is the intent to file a claim letter, was provided outside of the time allotted for discovery in the court's scheduling order. Exhibit B, which is the alleged denial of the claim, was provided before the deadline, albeit late in the process. *See* Dkt. 14 (stating that the discovery deadline was January 21, 2020, Exhibit A was provided on March 17, 2020, and Exhibit B was provided in early January 2020).

As to Exhibit A, the court may modify a deadline in its scheduling order if the party seeking the modification shows good cause for failing to timely file the report. *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). "To show good cause, the party seeking to modify the scheduling order has the burden of showing 'that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 237 (5th Cir. 2015) (quoting *Filgueira v. U.S. Bank Nat'l Ass'n*, 734 F.3d 420, 422 (5th Cir. 2013)). To determine if there is good cause, the court must consider:

> "(1) the explanation for the failure to timely [comply with the scheduling order];
> (2) the importance of the [modification];
> (3) potential prejudice in allowing the [modification]; and
> (4) the availability of a continuance to cure such prejudice."

*Id.* (quoting *Meux Surface Protection, Inc. v. Fogleman*, 607 F.3d 161, 167 (5th Cir. 2010)).

Here, because EP did not even file a response to the motion to strike, it has not met its burden to show good cause for a modification of the discovery deadline. Accordingly, JA's motion to strike Exhibit A is GRANTED.

However, the other reasons JA provides for striking the Exhibit B, which was provided during the time provided in the scheduling order, go to the weight of the evidence, not its admissibility. Accordingly, the court DENIES the motion to strike Exhibit B.

### III.  MOTION FOR SUMMARY JUDGMENT

The court now turns to whether summary judgment should be entered based on EP's statute of limitations defense.

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 436 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2540 (1986). If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008).

Under the Carmack Amendment to the Interstate Commerce Act, which the parties agree applies to JA's claim,

> A carrier may not provide by rule, contract, or otherwise, a period of less than 9 months for filing a claim against it under this section and a period of less than 2 years for bringing a civil action against it under

4

>this section. The period for bringing a civil action is computed from the date the carrier gives a person written notice that the carrier has disallowed any part of the claim specified in the notice.

49 U.S.C. § 14706(e)(1). Additionally,

>(A) an offer of compromise shall not constitute a disallowance of any part of the claim unless the carrier, in writing, informs the claimant that such part of the claim is disallowed and provides reasons for such disallowance; and
>(B) communications received from a carrier's insurer shall not constitute a disallowance of any part of the claim unless the insurer, in writing, informs the claimant that such part of the claim is disallowed, provides reason for such disallowance, and informs the claimant that the insurer is acting on behalf of the carrier.

*Id.* § 14706(e)(2).

Here, the parties agree that there was no contractual limitations period, and, while they do not agree as to how to get there, they agree that a two-year limitations period applies. *See* Dkt. 13 (arguing that the most analogous Texas limitations period—two years—applies and that "the limitations period [began] to run when the carrier provide[d] 'clear, final and unequivocal' notice that the claim [was] disallowed or denied" (quoting *Polaroid Corp. v. Hermann Forwarding Co.*, 541 F.2d 1007, 1014 (3d Cir. 1976)) ; Dkt. 14 ("A Carmack claim is not time barred until 2 years after the carrier' proper definitive denial of a properly filed claim."). The relevant disagreement between the parties is *when* that two-year period started. While limitations runs from the carrier's notice of disallowance under the statute, courts generally hold that "in order effectively to commence that period of limitations, a carrier's notice of disallowance must be clear, final, and unequivocal." *Combustion Eng'g, Inc. v. Consol. Rail Corp.*, 741 F.2d 533, 536–37 (2d Cir. 1984) (citing cases from the Third, Seventh, and Ninth Circuits) (holding that a notice that indicated that "the claim *as presented* was disallowed" and requesting further information was not "a clear, final and unequivocal

5

disallowance"). EP contends the October 31 notice was sufficient to commence the limitations period, JA argues that it was not.

The October 31 letter requests NTG's assistance "in conducting our investigation" and seeks "copies of any and all documentation related to this claim." Dkt. 13, Ex. 1, Ex. B. It concludes that the MIMI is "unable to accept responsibility for any claims *unless and until* we receive the above information or documentation" and that MIMI "must deny [the] claim *as presented*." *Id.* (emphasis added). This is clearly a contingent denial, not the clear, final, and unequivocal type of denial required to commence the limitations period. Thus, EP has not shown that the statute of limitations had run before JA filed suit. Accordingly, EP's motion for summary judgment is DENIED.

### IV. CONCLUSION

JA's motion to strike is GRANTED IN PART and DENIED IN PART. It is GRANTED with regard to EP's Exhibit A, which the court STRIKES. It is otherwise DENIED.

EP's motion for summary judgment is DENIED.

Signed at Houston, Texas on May 1, 2020.

_____
Gray H. Miller
Senior United States District Judge

6